LUTHER FOOT *v.* BENJAMIN MAXHAM & ELKANAH MAXHAM. Windsor, *February,* 1837.

L. deeded to M. a tract of land, subject to a lease, which, as to one part, expired 1st February, and the residue, 1st May, and also subject to a mortgage to one D. of about $700,00, and covenanted that the mortgage should be discharged before the expiration of the lease, or that M. should not be obliged to make any further payments on the notes given to secure the purchase money. $300,00 of the purchase money was paid when the deed was given. In an action on one of the notes; *held,* that the ambiguity arose from the testimony, shewing the payment of the $300,00; that the parties intended by the term "expiration of the lease," the time when it first expired as to part, viz. 1st of May, and that the failure of L. to discharge the mortgage to D. before that time, operated as a release of all the notes given for the purchase money.

This was an action on note, dated, March 17, 1834, for three hundred dollars, payable in one year, to William Lewis or bearer, and indorsed to plaintiff.

Plea—non assumpsit, with notice of special matter.

On the trial of the said issue, by the jury, the plaintiff read, in evidence, the note described in the declaration, with the indorsment thereof, the execution being conceded.

The defendants gave evidence to prove, that on the 17th day of March, 1834, they purchased of said William Lewis, certain land in Sherburne, and paid therefor, in money, three hundred dollars, and gave five notes of hand, of which the present was the one first falling due, and, as a part of said contract, the sealed instrument herein after mentioned, was executed and delivered, between said parties. The defendants gave further evidence, tending to show, that the mortgage to Dain, mentioned in said instrument, was yet outstanding, an incumbrance on said land, the said Lewis not having procured the same to be discharged, nor obtained any quit-claim of the same. The sealed insstrument above mentioned, was as follows,—

" This agreement, made and entered into, this 17th day of
" March, A. D. 1834, by and between William Lewis, Jr. of
" Woodstock, in the county of Windsor, of the one part, and
" Benjamin Maxham and Elkanah Maxham, both of Bridg-
" water, in the same Windsor county, of the other part wit-
" nesseth ;—

" That whereas the said Lewis, of the first part, hath this day
" deeded to the said Benjamin and Elkanah Maxham, a certain
" parcel of land, in Sherburne, in the county of Rutland, con-
" taining about fifty acres of land, by deed of warranty, and

"whereas, one Aaron Colton, of the said Sherburne, has here-
"tofore taken a lease of the same premises, of the said Lewis,
"which lease will expire, on the mill part of said premises, on
"the first day of February, 1835; and on the residue, on the
"first day of May, A. D. 1835, and whereas, the said Lewis,
"on the 4th day of February, A. D. 1831, executed a deed of
"mortgage, of the said premises, to one Oxenbridge Dain, for
"$704,41, which said mortgage to said Dain is yet undis-
"charged;—Now, the said Benjamin and Elkanah hereby agree
"to and with the said Lewis, not to take possession, under their
"said deed from the said Lewis, until the time the lease of the
"said Colton, from the said Lewis, shall expire according to the
"terms thereof—and the said Lewis doth hereby agree to and
"with the said Benjamin and Elkanah, their heirs and assigns,
"that his said mortgage deed, to said Dain, shall be discharged
"of record, or procure a deed of quit-claim from the said Dain
"to said Benjamin and Elkanah, previous to the time of the ex-
"piration of the said lease to the said Colton, from the said
"Lewis, or that, in case it is not, the said Benjamin and El-
"kanah shall not be obligated or holden to make any further
"payments on the notes given to secure the purchase mo-
"ney of the said premises, so deeded to them, by the said
"Lewis."

In testimony whereof, &c.

    (Signed)        WILLIAM LEWIS, Jr.    Seal.
                    BENJ. MAXHAM.         Seal.
                    ELKANAH MAXHAM.  Seal.

The plaintiff requested the court to charge the jury that, not-
withstanding this shewing, the plaintiff was entitled to recover.
The court declined so to charge, but instructed the jury that, if
they found the execution of the note on the occasion, and for
the consideration aforesaid, the execution of said sealed writing
being conceded, and found the Dain mortgage not released or
any quit-claim thereof, they would find a verdict for the defen-
dants. The jury retured a verdict for defendants, and the plain-
tiff excepted.

*Aikens & Edgerton, for the plaintiff.*

The note, in question, fell due on the 17th March, 1835;
about six weeks prior to the expiration of the time given Lewis,
by the terms of the agreement, to remove the incumbrance of

the mortgage. The other notes falling due in successive years thereafter.

Windsor,
February,
1837.

Foot.
v.
Maxhams.

The notes and the agreement are, in effect, parts of the same contract, by which the defendants assumed to pay Lewis $300, on the 17th day of March, 1835—$300, on the 17th March, 1836, $150, on the 17th March, 1837, and the balance on the 17th March, 1838, leaving Lewis his election, either to procure a discharge of the mortgage to Dain, prior to the 1st day of May, 1835, or waive all "*further payments*" of the aforesaid sums;—or, in other words, the defendants assumed, unconditionally, to pay $300, on the 17th March, 1835, and, unless Lewis procured a discharge of the mortgage, by the first day of May, thereafter, they were to be freed from the "*further*" or remaining payments.

The law will *not presume* that the parties contemplated a failure or neglect of the defendants to pay their notes *at maturity*, till they had some *legal right* to withhold such payment. *Such* right could only accrue to them upon the event of Lewis' failure to redeem, *or rather* his making *his election not to redeem* the premises from the balance of the Dain mortgage, which event could not happen until the last day of April, 1835, six weeks and more *after* the note, in question, became due.

The failure of Lewis to redeem the Dain mortgage is made, by the agreement of the parties, to operate as a *release* of the notes, contemplated to be unpaid at the time of such failure, in the nature of *stipulated damages,* for leaving the incumbrance to be removed at the expense of the defendants.

To say that such failure, or election, should also operate as a forfeiture of *other moneys*, due *before* the failure, and contemplated to have been already paid, and which *would have been paid*, but for a breach, by the defendants, of *their* contract to pay on the 17th March, 1835, would be to reward them for their breach of contract, by increasing the plaintiff's forfeiture, *far beyond* what the parties stipulated in the contract.

*Marsh & Williams, for defendant.*

The difficulty arises from the circumstance, that the note, by the terms of it, became payable before the conditions, specified in the articles, were to be performed, and from the expression in the articles, "the said Benjamin and Elkanah shall not be obligated or holden to make any *further payment.* on the notes given for the security of the purchase money," &c.

The power of the payee to control or postpone the payment of a note, already due or becoming due at a future day, by such an instrument as the articles, cannot be disputed. Indeed, the payee may covenant never to sue, which may be pleaded and will operate as a perpetual bar, and this, alike, whether the note is now due, or falls due at a subsequent period.

And such a covenant, made while the note remains in the hands of the payee, is, by the law then in force, equally imperative on the indorsee as on the payee.

The question rather is, what-was the intention and understanding of the parties at the time ?

The meaning of the parties cannot be ascertained from the contract itself, but, as in other cases, recourse must be had to other papers executed, and perhaps to other facts happening contemporaneously with the contract—This is more evident, as the contract refers to other papers, executed at the same time, without describing them sufficiently.

In cases of doubt, the instrument is to be construed most strongly against the covenantor.

This being a latent ambiguity, must be explained by testimony. 10 Mass. Rep. 459 & 379.

The case states that there was proof, that the mortgage to Dain, mentioned in the contract, was still undischarged on the record, and that no deed had been procured from him to the defendants—that the note, in suit, was one of the notes given for the purchase money of the land, to which the contract relates, and that the sum of three hundred dollars was paid down, at the time of the purchase.

Now the court may well believe that the expression, "*further payments*," refers to the money then advanced.

Indeed, the case admits of no other construction. Nothing is said in the instrument about any payment having been made by the defendants, and yet, the word, *further*, clearly refers to some payment, then already made, on the execution of the deeds. The case would then shew that all the notes, given for the land, were included in the contract.

Nothing appears but that the contract was to be at an end, in case the Dain mortgage was not redeemed by Lewis, by the time stipulated ; at any rate, the defendants were not bound to

take the land and might abandon the purchase, by forfeiting the payment already made, which was a sufficient forfeiture.

The court may reject the word *further*. It will then read, " no payment on the notes," &c. 7 Vt. Rep. 104.

This construction is strengthened by the fact, that the money and four years interest on the Dain mortgage nearly correspond with the balance due of the purchase money, deducting $300, paid down. It corresponds, also, with the equity of the case.

But the construction, contended for by the plaintiff, will require the court to interpolate a whole sentence, viz—" further than the note, which falls due before the condition is to be performed."

In *Jackson* v. *Hudson*, 3 Johns. Rep. 375, 387, it is said, where a deed may enure several ways, the grantee shall have his election which way to take it.

In *Jackson* v. *Myers*, 3 Johns. Rep. 388, 95, the intent, when apparent, and not repugnant to any rule of law, will control technical terms—the intent, and not the words, is the essence of every contract.

In *Jackson* v. *Gardner*, 8 Johns. Rep. 394, 406,—that exceptions in a deed, and every uncertainty, are to be taken favorably to the grantee.

In *Keisselbrack* v. *Livingston*, 4 Johns. Rep. 144, 146, it is said, parol proof is admissible when the contract, in the first instance, is imperfect, without referring to facts *aliunde*, even to correct a mistake in the contract itself.

In *Souverbye* v. *Arden*, 1 Johns. Rep. 251, 252, a declaration, made at the time of delivery, as to the intent of the parties, may govern the deed.

Parol evidence may be admitted, that words, taken down in writing, were contrary to the concurrent intention of the parties. 1 Madd, Ch. 60.

The opinion of the court was delivered by

WILLIAMS, Ch. J—It is to be regretted that the parties to the sealed instrument, dated the 17th day of March, 1834, were not more explicit. By a very trifling alteration in the phraseology, the contract would have been such an one as the plaintiff contends for. An omission of a single word would have placed it beyond a doubt, that the parties intended what the defendant now claims they did. By adding after the word " notes," " thereafter due or payable," the plaintiff could have

insisted, without any fear of contradiction, that no other notes were intended to be released, than those which fell due after the expiration of the lease ; and by omitting the word "further," there could have been as little question, that all the notes, executed to secure the purchase money, were intended. We are required, however, to put a construction on this contract, as it appears from the case, as presented ; and we are, by no means, certain, that the introduction of other evidence might not have warranted a different construction. By the introduction of other evidence, it is not meant that evidence of the declarations of the contracting parties, as to their intent, would have been received. But, possibly, other facts may have existed, which would tend, at least, to shew to what the parties had reference, by the terms made use of. Very possibly, the powers of a court of chancery might be successfully exercised, in bringing about a different result from the one, to which we arrive, from our present views of the contract. In short, we are far from feeling any degree of certainty, that a decision, either way, of the case before us, may not manifestly be unjust and inequitable, as to the parties.

The doubt or ambiguity, in this case, arises from [the use of the term "*further*," connected with the term "*payments*," which Lewis covenanted the defendants should not be holden to make, or in other words, which he released, in case he neglected or refused to procure a discharge of the Dain mortgage by the time stipulated. The agreement itself does not mention that any payments had been made, either towards the purchase money, or on the notes. Indeed, no payments could have been made on the notes, as they were executed at the same time with the agreement. If the note, declared on, had been the only one given for the purchase money, there could have been no question, but that the agreement referred to that note, and the term "further" must have been rejected as superfluous, whether the note was payable before or after the expiration of the lease. If the note sued, together with the other note of $300, payable at the same time, had been the only two notes, given for the purchase money, the same consequence would have followed. The doubt, then, arises from the introduction of the other evidence ; to wit, the mortgage, by which it appears that there were still three other notes of $375, payable after the lease had wholly expired. The ambiguity, therefore, in this in-

Windsor,
Fberuary,
1837.

Foot
v.
Maxhams.

stance, arises from the introduction of extraneous evidence, rather than from the instrument itself. What, then, are we to suppose, was the intention of the parties to this instrument, taking into consideration their situation at the time, having reference to the facts, which were then before them? On the one hand, it seems difficult to suppose, that they could have intended that notes, payable before the expiration of the lease, would not be paid at maturity; and on the other, it is equally difficult to believe, that the defendants would, in addition to the three hundred dollars, paid at the time of the execution of the contract, have also undertaken to pay the two notes of three hundred dollars each, making in all $900, and have retained only $375, to pay the Dain mortgage, which was stated at $604,41, and, with the interest, would have amounted to about $870; and to have permitted them to retain the sum of $975, for the payment of $870, would, to say the least, have given them a good bargain. If there had been no more than from $300, to $400, due on the Dain mortgage, and that so understood by all the parties at the time, then it would have been rational and consistent that the agreement should have been for the defendants to pay the two $300 notes, and the residue left to meet the contingency of Lewis failing to pay the mortgage; and such, probably, we should have considered they intended by their contract. But this does not appear to have been the case, and the Dain mortgage, so far as we can learn from the agreement, amounted to the sum of $870, as before mentioned.

The parties, understanding that the sum was due, may be supposed, by the expression "further payments," to refer to the payments already advanced, to wit, the $300, paid at the time of the execution of the contract, rather than to any payments, which would thereafter be made of the notes executed and to fall due thereafter. Further, it is susceptible of doubt, to what period the parties referred, as the time of the expiration of the lease. By a very critical exposition or construction of the words, the lease would not expire until all the premises were freed from the lease.

The agreement states, that Colton had taken a lease, which "*will expire*, on *the mill* part of said premises, on the first of February, 1835, and on the residue, on the first day of May, 1835." In another part it says, that the said Benjamin and Elkanah, the defendants, shall not take possession under the deed from said

Windsor,
February,
1837.

Foot
v.
Maxhams.

Lewis, "until the time the *lease of the said Colton*, from the said Lewis, shall expire, according to the terms thereof." · The parties in the agreement, then, evidently considered and speak of the lease as expiring, as well on the first of February as the first of May; one part on the first of February, and the other on the first of May. It may, therefore, be considered, as the other papers and circumstances, which were in proof, would render it highly probable and equitable that it should have been so, that the parties intended the Dain mortgage should be extinguished and discharged before the defendants were to enter into possession, and that they intended by the term "*expiration of the lease*," the time when it expired as to the mill, and when the defendants were to go into possession of that part of the premises. This construction seems to be required, in order to do justice to the parties to the contract, and render the whole contract not only just and equitable, but remove any ambiguities in the other language made use of. None of the notes would then have been due, before Lewis was to have procured a discharge of the mortgage. The words "further payments" would then evidently refer to the payments already made, or be rejected, and it would have been optional with Lewis, either to have paid the Dain mortgage, which, with the interest, would have amounted to about $875, when the defendants notes began to carry interest, and collect all the notes of the defendants; or, by neglecting so to do, leaving with them $975, a part of which was not due under two, three, and four years, to meet that mortgage. Our construction of this contract, then, is this, that the covenant, contained in the agreement, that the defendants should not be holden, or obligated to make any further payments on the notes, given to secure the purchase money, extends to all the notes given, and, of consequence, to the note in suit; and that the failure of Lewis to pay the Dain mortgage, operated as a releasing of all the notes. The judgment must, therefore, be affirmed.